UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMAINE BROWN,

        Plaintiff,

    v.                                Case No. 22-cv-1522-bhl

NATHANIEL SILVA,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

       Plaintiff Jamaine Brown, who is incarcerated at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. Brown is proceeding on an Eighth Amendment claim based on allegations that Defendant Nathaniel Silva was deliberately indifferent to Brown's risk of falling when he escorted him up the stairs. On November 27, 2023, Defendant moved for summary judgment. For the reasons explained below, the Court will grant Defendant's summary judgment motion and dismiss this case.

## BACKGROUND

       At the relevant time, Brown was incarcerated at Waupun Correctional Institution, where Defendant worked as a correctional officer. On October 24, 2022, Defendant was assigned to work on the Restrictive Housing Unit (RHU) and was tasked with escorting inmates from their cells to the showers. Brown was housed on the upper floor of the RHU. Brown desired to use the showers on his floor, but Defendant told him he had to use the showers on the lower floor or skip his shower for the week. Brown asserts that the showers on his floor were available, but he agreed

to use the showers on the lower floor since he is allowed only one shower per week. Dkt. Nos. 33, 40 at ¶¶1-14.

Defendant handcuffed Brown behind his back as is standard protocol for RHU inmates. Brown explains, however, that on previous occasions, Defendant and other officers had always "ben[t] the rules" and handcuffed him in front because Brown suffers from sciatica, which sometimes makes it difficult for him to walk; he also has a limp from a previous injury. Brown explains that handcuffing him in the front would allow him to hold on to the stair railing with both hands. Brown states that he asked why Defendant was not handcuffing him in front like he usually did. According to Defendant, he checked the computer and confirmed that Brown did not have a medical restriction allowing him to be handcuffed in front. It is undisputed that Brown had requested lower tier and lower bunk restrictions, but the requests were denied because he was housed in the RHU, where such restrictions are not allowed for security reasons.[1] Dkt. Nos. 33, 40 at ¶¶15-23, 73-77, 94; Dkt. No. 41 at ¶¶12.

Brown explains that he walked slowly with a limp while being escorted. He safely navigated walking down the stairs to the shower. After taking a shower, Brown was escorted up the stairs to his cell. He again walked slowly with a limp. According to Brown, as they climbed the stairs, Defendants said, "Don't fall cuz I'm not gonna catch yo big ass." Defendant asserts that he told Brown if he fell, he would try to catch him, but he could not make any promises. Defendant asserts that two steps from the top, Brown lost his footing and started to fall backwards. At that time, Defendant was holding on to Brown's right bicep with one hand and onto the stair railing with the other hand. Defendant explains that he tried to pull Brown back up as he fell but he was

---

[1] Defendant does not explain and the Court cannot intuit what security reasons would support the denial of lower tier and lower bunk restrictions in the RHU when such restrictions are medically indicated, but that issue is not before the Court.

2

unable to do so, so he let him go. Brown was transported to the emergency room, where he was diagnosed with a concussion, neck strain, and bruises. Once back at the institution, he was prescribed Tylenol, ibuprofen, and an ice bag. Dkt. Nos. 33, 40 at ¶¶24-38, 88-92.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Brown asserts that Defendant was deliberately indifferent to the excessive risk he faced of falling down the stairs. To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that a prison official intentionally disregarded a known, objectively serious condition that posed an excessive risk to the plaintiff's health or safety. *Perez v. Fenoglio*, 792

3

F.3d 768, 777 (7th Cir. 2015) (citations omitted). A serious condition is "one that is so obvious even a lay person would recognize the need for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). A state official demonstrates the requisite state of mind if the official is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] draw[s] that inference." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is a high standard; ordinary negligence and even gross negligence are not enough. *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991).

Whether Brown suffered from an objectively serious condition that prevented him from safely navigating stairs is a close call. Brown explains that he had been diagnosed with sciatica, which frequently (although not always) caused back pain that radiated down his leg. He also asserts that he walked with a limp due to a previous injury. Obviously, not all people who have back pain and/or a limp have difficulty using the stairs safely. Defendant highlights that Brown did not have a lower tier restriction, suggesting that he was medically cleared to use the stairs. The mere lack of such a restriction is not dispositive. Indeed, the parties agree that lower tier restrictions are routinely denied to all inmates in the RHU. It is undisputed, however, that Brown had no medical restriction requiring him to be handcuffed in the front, and it is the practice in the RHU to handcuff all inmates behind their backs for security reasons. Further, although Brown asserts that his sciatica and limp required that he walk slowly, there is no evidence suggesting he previously fell, lost his balance, or was unable to support his own weight while being escorted up and down the stairs. Still, according to Brown, Defendant (and other officers) knew of his challenges walking and so, prior to the day at issue, they would handcuff Brown in the front to allow him to hold on to the railing with both hands whenever he navigated the stairs. The Court

4

need not resolve whether Brown's sciatica and limp constituted objectively serious conditions because his claim fails for an independent reason.

No jury could reasonably conclude that Defendant was deliberately indifferent to Brown's condition. In his complaint, Brown alleged that Defendant "intentionally dropped plaintiff down a flight of stairs," after "let[ting] plaintiff's escort hold go." Dkt. No. 1 at 2-3. Brown has since softened his characterization of what happened, likely because hallway video does not support the allegations in the complaint. Video shows Defendant holding on to Brown's right bicep as they very slowly walk up the stairs. Defendant grips the railing with his free hand to steady himself and Brown. Defendant does not rush Brown; instead he allows Brown to set the pace. Brown has a clear limp and moves slowly and apparently with some pain as he climbs the stairs, but he is able to do so with Defendant's support. At one point, about halfway up, he appears to lean back a bit as though he is losing his balance, but Defendant steadies him, and Brown resumes climbing the stairs. Two steps from the top, Brown takes a step with his left foot, but his right foot slips off the stair and he quickly and forcefully falls backwards. Defendant can be seen grabbing at Brown, but he is unable to stop Brown from falling down the seven stairs to the landing below. Several officers are nearby and rush to help Brown.

The Supreme Court long ago explained, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment." *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Here, the video dispels any suggestion that Defendant "intentionally dropped plaintiff down a flight of stairs." The video shows that Brown slipped[2] and

---

[2] It appears that Brown's shoe lost its grip on the stair, possibly because it was wet from the shower. It does not appear that Brown's strength gave out or that he lost his balance as a result of his back pain/limp. It is worth noting that the Seventh Circuit has consistently held that "slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014).

forcefully fell backwards and that Defendant's efforts to catch him were unfortunately ineffective. Although Defendant gripped Brown's arm, the force with which he fell backwards was too great for Defendant to maintain his hold.

Brown is thus left to complain that Defendant's failure to catch Brown as he fell violates the Eighth Amendment. But these facts do not amount to a constitutional violation. Brown unquestionably had an unfortunate accident, but accidents are not violations of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that "deliberate indifference describes a state of mind more blameworthy than negligence").

Brown asserts that Defendant *could* have allowed Brown to use the showers upstairs or he *could* have handcuffed him in the front to allow Brown to steady himself on the railing, but Defendant's failure to do so amounts to, at most, negligence, not an intentional constitutional violation or deliberate indifference. The mere fact that Brown and others believed it acceptable and appropriate to "bend" the rules on prior occasions to accommodate Brown's back pain and limp, does not mean that Brown had a right to insist that they do so in all instances. In short, while Brown's back pain and limp may have increased his risk of falling while walking, Defendant addressed that risk by allowing Brown to move at his own pace and by holding on to Brown's arm to steady him as he climbed the stairs. Defendant was "not required to provide a maximally safe environment." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (citations omitted). Because no jury could reasonably conclude that Defendant acted with deliberate indifference, Defendant is entitled to summary judgment.

# CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's summary judgment motion (Dkt. No. 31) is **GRANTED** and this action is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 20, 2024.

s/ *Brett H. Ludwig*
_____
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.